```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                    Criminal No. 14-cr-104-LM-1
                                              Opinion No. 2020 DNH 146
Roger Perkins


**O R D E R**

In this case, the court issued an opinion yesterday detailing the reasons that the Bureau of Prisons ("BOP") should exercise its discretion to furlough defendant to a term of home confinement to last only for the duration of the pandemic. United States v. Perkins, Crim. No. 14-cr-104, 2020 WL 4783558, at *9 (D.N.H. Aug. 18, 2020). The court incorporates herein the findings and conclusions in that opinion. The court explained in that opinion why BOP was better suited to release defendant than the court. In short, only BOP has the power to issue a temporary release or furlough; the court does not have such power.

BOP communicated to defense counsel on today's date that it would not revisit its previous decision to deny defendant's release.[1] As the court explained in its opinion, all of the

---

[1] In light of the health risks, the court appreciates the haste with which BOP communicated its position. The court is troubled, however that BOP continues to characterize defendant as having a "history of sex offenses." As the court spelled out in its opinion, this characterization is inaccurate.

goals of sentencing are best served for the BOP, rather than the court, to release this defendant on a temporary furlough. Since BOP declines to exercise its discretion to release this defendant on such a furlough, defendant has filed a renewed request for release (doc. no. 89). The court indicated in its opinion that it would revisit defendant's request in the event BOP denied him release. The court now grants defendant's renewed request for release.

First, there is no dispute here that defendant is a high risk of death or serious illness should he contract COVID-19. The court detailed in its opinion the reasons defendant's risks are particularly severe.

Second, as explained in its detailed opinion, the court is persuaded that, despite his criminal record, defendant is a low risk for dangerousness if released under strict supervision. BOP concurs with this low risk assessment, as it has rated defendant as a "low risk" for violence and has housed him in a low security prison facility.

Third, the court reconsiders the other goals of sentencing in light of BOP's decision to deny release. Under the unique circumstances here, the court finds that a reduction in defendant's sentence would sufficiently reflect the seriousness of the offense, afford adequate deterrence, promote respect for the law, and provide just punishment. See 18 U.S.C. §

3553(a)(2). Although the court sentenced defendant to a lengthy term of incarceration, it did not intend that defendant suffer the very real risk of death while serving that sentence. And while a furlough would <u>best</u> serve the goals of sentencing, a death sentence would not serve the goal of promoting respect for the law and would not be a just punishment.

Defendant has served more than half of his sentence—he has been detained since August 28, 2014 (nearly 6 years) and his projected release date is approximately 4 years away in August 2024.  The date on which defendant becomes eligible for release from BOP custody to home detention or a residential reentry program is February 29, 2024.  The six-year term defendant has served is more than twice the amount of time he has ever previously been incarcerated.  The court finds that a six-year term of imprisonment followed by a more than three-year term of special supervised release on home confinement until February 29, 2024, followed by a five-year term of supervised release is a just punishment for defendant and is likely to deter defendant from relapsing into unlawful conduct.

Finally, the court weighs the sentencing factors against the strength of defendant's extraordinary and compelling reasons for release.  See United States v. Tidwell, ___ F. Supp. 3d ___, 2020 WL 4504448, at *6 (E.D. Pa. Aug. 5, 2020); United States v. Daugerdas, ___ F. Supp. 3d ___, 2020 WL 2097653, at *4 (S.D.N.Y.

May 1, 2020). Weighing most heavily in favor of a reduction in defendant's sentence are defendant's extraordinary and compelling reasons for release. The court is concerned that requiring defendant to stay in BOP custody during the pandemic may well amount to a death sentence. Thus, although defendant's release poses a risk that he will reoffend, the court finds that that risk is outweighed by a low likelihood of dangerousness and, most importantly, by the extreme danger posed to his health if he remains incarcerated.

For these reasons, and in light of BOP's decision not to release defendant on a furlough, the court concludes that defendant has met his burden of showing that he is entitled to a sentence reduction under § 3582(c)(1)(A). A reduction in defendant's sentence to time served followed by a term of special supervised release on home confinement until February 29, 2024, will best serve the goals of sentencing.

**CONCLUSION**

For the foregoing reasons, the court grants defendant's motion for compassionate release (doc. no. 80) and renewed motion (doc. no. 89) as follows:

1) The defendant's sentence will be reduced to time served.

2) The defendant will be placed on a special term of supervised release until February 29, 2024, which is equivalent

4

to his BOP eligibility date for home detention, during which time he will remain on home confinement under the terms of release outlined in Appendix A.

3) Following the term of special supervised release, the defendant will be placed on supervised release for a term of five years.

4) During the terms of special supervised release and supervised release, the defendant shall be subject to the Supervision Conditions as set forth in Appendix A.

5) The BOP shall release the defendant immediately following processing.

6) The court recommends that the BOP screen the defendant for COVID-19 within twelve hours prior to his release, and if he is displaying symptoms consistent with COVID-19, test the defendant and share the results with the United States Probation Office in the District of New Hampshire.

7) The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 19, 2020
cc:  Counsel of Record
     U.S. Probation
     U.S. Marshal

**APPENDIX A**

**SUPERVISION CONDITIONS:**

Within seventy-two hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the district to which the defendant is released.

While under supervision, the defendant must comply with the following mandatory conditions:

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 72 drug tests per year.

The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

While under supervision, the defendant must also comply with the following standard conditions of supervision that have been adopted by this court:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer.

2) The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

4) The defendant shall support his or her dependents and meet other family responsibilities.

    5) The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons.

    6) The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

    7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

    8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

    9) The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

    10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

    11) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

    12) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

    13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

    In addition, the defendant must comply with the following special conditions:

    1. Upon release, the defendant must obtain transportation directly from the prison to his approved residence.  The defendant must eliminate or minimize any stops during that transport.

    2. The defendant must self-quarantine in an approved residence during the first fourteen days of his supervised release.

    3. The defendant is restricted to his residence at all times during his term of special supervised release except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer. During this time period, the defendant's location will be monitored at the discretion of the probation officer.  The probation officer will determine what type of technology to use to monitor the defendant. The defendant must follow the rules and regulations of any monitoring program.  The defendant must pay for the cost of the program to the extent he is able, as determined by the probation officer. If, after six months, defendant has not violated this condition or any other condition of his special supervised release, the court will favorably consider his request to lift this condition.

    4. As directed by the probation officer, the defendant shall participate in a program approved by the United States Probation Office for treatment of narcotic addiction or drug or alcohol dependency which will include testing for the detection of substance use or abuse. The defendant shall also abstain from the use of alcoholic beverages and/or all other intoxicants during and after the course of treatment. The defendant shall pay for the cost of treatment to the extent he is able as determined by the probation officer.

    5. The defendant shall submit his person, residence, office, or vehicle to a search conducted by a U.S. probation officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion that contraband or evidence of a violation of a condition of release may exist; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.